Filed 6/24/26  City of Sacramento v. Esguerra-Sheldon CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| CITY OF SACRAMENTO,<br>  Plaintiff and Respondent,<br><br>  v.<br><br>JUDITH ESGUERRA-SHELDON,<br>  Defendant and Appellant;<br><br>RICHARDSON GRISWOLD<br>  Respondent. | C102712<br><br>(Super. Ct. No. 34-2021-00295965-CU-MC-GDS) |

After citing Judith Esguerra-Sheldon for allegedly maintaining substandard conditions at her property in violation of code provisions, the City of Sacramento (City) filed a complaint against Esguerra-Sheldon for public nuisance and violation of the City's dangerous building, substandard housing, and general blight codes.  The trial court appointed a receiver for the property pursuant to Health and Safety Code section 17980.7 to correct the code violations upon the City's application.  The trial court subsequently approved the sale of the property and granted the receiver's motion for approval of his final account, termination of the receivership, and exoneration of his surety's bond. Esguerra-Sheldon appeals from the order approving the receiver's final account and granting the receiver's motion to terminate the receivership and exonerate the surety's bond.

1

Esguerra-Sheldon contends (1) the order appointing the receiver was void, (2) the trial court lacked jurisdiction to appoint a receiver because the City did not engage specialized enforcement agencies, (3) the trial court's orders were invalid because the receiver did not submit required building plans, (4) a construction bid matrix did not support trial court funding and sale orders, (5) the City and the receiver engaged in fraud, (6) the City improperly obtained her default, and (7) the trial court erred in discharging the receiver and exonerating the surety's bond.

Finding no merit in the contentions, we will affirm the trial court's order.

BACKGROUND

Esguerra-Sheldon owns real property in the City that includes a single family residence (the property). In July 2020, the City received complaints of code violations, overgrown vegetation, and junk along a fence at the property. The complaint of code violations was assigned to City Building Inspector Elijah Prok. The other complaints were assigned to Code Enforcement Officer Vang Xiong.

During his initial inspection of the property, Prok could not enter the house but saw unpermitted framing and alterations and improper electrical wiring, conditions that, in his opinion, rendered the house substandard and dangerous. Prok did not see any improvement in the condition of the property during a subsequent visit, when he again could not enter the house. He issued a notice and order to repair or demolish dated August 11, 2020 (the Prok notice).

The Prok notice was directed to Esguerra-Sheldon and explained that the interior and exterior of the house had not been completely inspected, the Prok notice did not contain a complete list of code violations, and other structural, electrical, plumbing or mechanical code violations could be identified upon further inspection. The Prok notice informed Esguerra-Sheldon that she could repair or demolish the house and if she elected to repair it, work had to commence within 30 days of the date of the notice and order and had to be completed within 60 days. It notified Esguerra-Sheldon of actions the City

2

could take if repair or demolition was not commenced and completed within the specified times and it informed her of her right to an administrative appeal. In addition, the Prok notice included a notice of a receivership petition under Health and Safety Code section 17980.7, stating that in no less than three days, the City might file a petition in the superior court seeking appointment of a receiver to rehabilitate the property, and for other relief, including injunctive relief. The Prok notice was served on Esguerra-Sheldon by certified mail, and a copy was posted at the property. Esguerra-Sheldon did not file an administrative appeal from the Prok notice.

After Prok conducted a follow-up inspection in October 2020 and found the property in the same or worse condition, the City imposed an administrative penalty against Esguerra-Sheldon. Prok conducted another inspection in November 2020, found the property in the same or worse condition, and a second administrative penalty was imposed. When there was no improvement in the condition of the property during a subsequent inspection, a third administrative penalty was imposed.

Prok inspected the property again on April 12, 2021. Esguerra-Sheldon denied Prok entry to the house but allowed him to view the backyard and inside of the garage. Prok saw several violations, including unpermitted installation of a water heater and an air conditioning unit, illegal wiring and framing, and overgrown vegetation and debris in the front and back yards.

Xiong went to the property in July 2020 in response to the complaints, but Esguerra-Sheldon did not allow him to inspect her backyard. When he returned in August 2020, Esguerra-Sheldon permitted him to view the property from a back gate, but did not allow him to enter the property. Xiong saw a substantial amount of junk and debris in the back of the property. He issued a notice and order to clean, remove, repair or cease illegal use of the property dated August 12, 2020 (the Xiong notice). The Xiong notice was directed to Esguerra-Sheldon and included a list of conditions that rendered the property a public nuisance and that had to be corrected. The Xiong notice stated that

3

if Esguerra-Sheldon elected to correct the conditions, work had to commence within 14 days from the date of the notice and had to be completed within 30 days. It informed Esguerra-Sheldon of further actions the City could take if corrections were not commenced and completed within those times, and of her right to an administrative appeal. The Xiong notice was served on Esguerra-Sheldon by certified mail, and a copy was posted at the property. Esguerra-Sheldon did not appeal from the Xiong notice.

Xiong reinspected the property in October 2020. A significant amount of trash remained on the property and Xiong saw little progress in clearing the trash on a return visit later that month. During a third visit that same month, Xiong saw minimal progress in clearing the trash. On October 22, 2020, the City imposed administrative penalties against Esguerra-Sheldon for her failure to correct the conditions.

Property conditions had worsened at the time of Xiong's December 2020 inspection. He saw new violations in the front portion of the property and the City imposed a second administrative penalty against Esguerra-Sheldon. When the property was in substantially the same condition during a February 2021 visit by Xiong, the City imposed a third administrative penalty.

On March 10, 2021, the City filed a complaint against Esguerra-Sheldon, alleging causes of action for public nuisance and violation of Sacramento City Code chapters 8.96, 8.100 and 8.04. About two months later, the City filed an ex parte application for an order to appoint a receiver pursuant to Health and Safety Code section 17980.7, and an order to show cause regarding confirmation of the receivership. The ex parte application was personally served on Esguerra-Sheldon. The City supported its application with declarations from Prok, Xiong, and two neighbors who described conditions at the property and their complaints to the City.

Esguerra-Sheldon did not appear at the hearing on the City's ex parte application. The trial court appointed Richardson Griswold as receiver of the property under Health and Safety Code section 17980.7, subdivision (c). It also ordered Esguerra-Sheldon

4

to show cause why the receivership should not be confirmed, and it ordered personal service of the order to show cause. Esguerra-Sheldon did not file an opposition to the City's application to confirm the receivership, and the trial court granted the City's application.

The trial court confirmed Griswold's appointment as receiver and granted him powers under Code of Civil Procedure section 568, Health and Safety Code section 17980.7, the order of appointment, and future court orders.[1] It found that Esguerra-Sheldon was given notice of the City's application for appointment of a receiver and that Griswold had the capacity and expertise to undertake and supervise the rehabilitation of the property. The trial court's order listed the receiver's powers, including the powers to take control of the property, keep the property vacant if necessary to carry out the purposes of the receivership, enter contracts to correct the conditions cited in the notices, and sell the property if necessary.

The receiver arranged for the City to inspect the property and identify existing code violations. Esguerra-Sheldon and two licensed contractors were present at the inspection. The City then issued a notice and order to repair or demolish dated May 17, 2021 (the City notice), identifying existing code violations and required corrections. The City notice was directed to the Sacramento Suburban Water District, and it was served on the Water District by mail and posted at the property.

In November 2021, following completion of clean up, the receiver filed an ex parte application for approval of the receivership plan and request for an increase in the receiver's certificate. The receiver informed the trial court that City inspectors had

---

[1] Code of Civil Procedure section 564 authorizes a trial court to appoint a receiver where necessary to preserve the property or rights of any party. (Code Civ. Proc., § 564, subd. (b)(9).) The receiver has, under the control of the trial court, power to take and keep possession of the property, make transfers and generally do such acts respecting the property as the trial court may authorize. (Code Civ. Proc., § 568.)

confirmed existing code violations at the property, the receiver received three bids to address the violations, and the receiver sought approval to proceed with Vitex Innovations, one of the contractors. Esguerra-Sheldon opposed the receiver's ex parte application. The trial court approved the ex parte application and subsequently denied Esguerra-Sheldon's motion for reconsideration.

On February 9, 2022, the City filed a request for entry of default against Esguerra-Sheldon. Default was entered on the same date.

The City conducted a final inspection in April 2022 and confirmed that all code violations had been corrected. The receiver then moved for an order to sell the property because there was a receivership lien of $301,591.94 and unpaid receivership fees and costs of about $10,000. Esquerra-Sheldon opposed the motion. Following oral argument, the trial court granted the receiver's motion to list the property for sale.

In May 2023, Esguerra-Sheldon filed an ex parte application to vacate the default entered against her on the ground that she was not properly served with the summons and complaint and request for entry of default. The trial court denied the ex parte request, stating that the requested relief was not available on an ex parte basis.

In November 2023, the trial court granted the receiver's motion for approval of final sale of the property, and the property was sold. In February 2024, the receiver filed a motion for approval of his final account, termination of the receivership, and exoneration of his surety's bond. After the motion was dropped because of defective service, the receiver refiled the motion. Esguerra-Sheldon filed an opposition and other documents asserting improper service and a request to set aside the order approving final sale of the property, all orders granted in excess of the relief demanded in the complaint, and the default judgment.

After oral argument by the parties, the trial court granted the receiver's motion for approval of his final account, termination of the receivership, and exoneration of his surety's bond. The trial court noted that the receiver had served Esguerra-Sheldon with

6

the motion at the address Esguerra-Sheldon had identified in papers she filed with the trial court. Because default had been entered against Esguerra-Sheldon and Esguerra-Sheldon had not set aside the default, the trial court declined to address Esguerra-Sheldon's challenges to the appointment of the receiver and orders allegedly beyond the scope of the complaint. The trial court observed that Esguerra-Sheldon's opposition primarily addressed issues not pertinent to the receiver's motion.

## RULES OF APPELLATE PROCEDURE

On appeal, we presume the trial court's orders are correct. The burden is on the appellant to affirmatively show, based on an adequate record, that the trial court erred. (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 (*Dilbert*); *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520 (*Tanguilig*); *Scholes v. Lambirth Trucking Co.* (2017) 10 Cal.App.5th 590, 595 (*Scholes*).) " 'All intendments and presumptions are indulged to support [the trial court's orders] on matters as to which the record is silent … .' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

In presenting her claims, the appellant must "[p]rovide a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).) In addition, all appellate briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).)

All appellate briefs must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) We are not obligated to construct legal arguments for a party and need not consider an issue when a party fails to comply with these requirements. (*Dilbert, supra*, 101 Cal.App.5th at p. 323; *Tanguilig, supra*, 36 Cal.App.5th at p. 520; *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201; *In re S.C.* (2006) 138 Cal.App.4th 396, 410.)

Self-represented litigants are not exempt from the above requirements. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; *Tanguilig, supra*, 36 Cal.App.5th at p. 520; *Scholes, supra*, 10 Cal.App.5th at p. 595.)  They are treated like any other party.  (*Nwosu*, at p. 1247; see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985 (*Rappleyea*).)

## DISCUSSION

### I

Esguerra-Sheldon begins by asserting that the order appointing the receiver was void.  However, she did not timely appeal from that order, and we lack jurisdiction to consider her contention.

Although there is authority that a trial court may set aside a judgment or order that is void on its face " 'at any time' " (*Svistunoff v. Svistunoff* (1952) 108 Cal.App.2d 638, 641-642; 4 Cal.Jur.3d (2026) Appellate Review, § 22; 9 Witkin, Cal. Procedure (6th ed. 2026) Appeal, § 29), the timely filing of a notice of appeal is "*an absolute prerequisite* to the appellate court's power to entertain the appeal."  (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group Dec. 2025 Update) ¶ 3:4.)  We have not found any authority exempting void orders from this rule regarding appellate jurisdiction. In *Carpenson v. Najarian* (1967) 254 Cal.App.2d 856 (*Carpenson*), the appellants challenged an order appointing a receiver, arguing there was no evidence establishing statutory grounds for an appointment.  (*Id.* at p. 861.)  Even though the appellants claimed the order was void, the appellate court concluded it lacked jurisdiction to consider the issue because no timely appeal to the appointment order had been filed. (*Ibid*.)

Here, the trial court's order confirming Griswold's appointment as receiver was entered on July 19, 2021.  The City gave Esguerra-Sheldon notice of the entry of that order on July 29, 2021.  Esguerra-Sheldon did not appeal from the order. Accordingly, we cannot consider her challenge to the order.  (*Alioto Fish Co. v.*

8

*Alioto* (1994) 27 Cal.App.4th 1669, 1679; *Carpenson, supra*, 254 Cal.App.2d at p. 861; Code Civ. Proc., § 904.1, subd. (a)(7) [an order appointing a receiver is an appealable order]; Cal. Rules of Court, rules 8.100(a)(1), 8.104(a)(1), (e); *Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1454 [a timely notice of appeal vests jurisdiction in the appellate court]; *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 [the time for appealing an appealable order is jurisdictional].)

## II

Esguerra-Sheldon next contends the trial court lacked jurisdiction to appoint a receiver because the City did not engage specialized enforcement agencies.

We do not consider this claim because, as discussed in the prior section, Esguerra-Sheldon did not timely appeal from the order confirming Griswold's appointment as receiver.

## III

In addition, Esguerra-Sheldon argues the trial court's orders were invalid because the receiver did not submit required building plans.

## A

Health and Safety Code sections 17980.6 and 17980.7 "compose a statutory scheme providing certain remedies to address substandard residential housing that is unsafe to occupy. Pursuant to section 17980.6, an enforcement agency may issue a notice to an owner to repair or abate property conditions that violate state or local building standards and substantially endanger the health and safety of residents or the public. Section 17980.7[, the statute under which the trial court appointed the receiver,] provides that, if the owner fails to comply with the notice despite having been afforded a reasonable opportunity to do so, the enforcement agency may seek judicial appointment of a receiver to assume control over the property and remediate the violations or take

other appropriate action." (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 912 (*City of Santa Monica*).)

A receiver appointed pursuant to Health and Safety Code section 17980.7 has the power to take complete control of the substandard property; secure a cost estimate and construction plan from a licensed contractor for repairs necessary to correct the conditions cited in the notice of violation; employ a licensed contractor to correct the conditions cited in the notice of violation; borrow funds to pay for repairs; sell receivership property pursuant to court order; and do such acts relating to the property as the trial court may authorize. (Health & Saf. Code, § 17980.7, subd. (c)(4); Code Civ. Proc., § 568; *City of Santa Monica, supra*, 43 Cal.4th at p. 930.) Where it is necessary to borrow money to preserve and manage receivership property, the receiver may ask the trial court to authorize the issuance of a receiver's certificate as security for money loaned to the receivership estate. (*County of Sonoma v. Quail* (2020) 56 Cal.App.5th 657, 673.)

A receiver must present, by noticed motion or stipulation of all parties, a final account and report, request for discharge, and request for exoneration of the receiver's surety. (Cal. Rules of Court, rule 3.1184(a).) The trial court must discharge the receiver when the conditions cited in the notice(s) of violation have been remedied in accordance with the trial court's order and a complete accounting of all costs and repairs has been delivered to the trial court. (Health & Saf. Code, § 17980.7, subd. (c)(9).) An order settling the receiver's final account is appealable. (*Aviation Brake Systems, Ltd. v. Voorhis* (1982) 133 Cal.App.3d 230, 233; see generally *Southern California Sunbelt Developers, Inc. v. Banyan Limited Partnership* (2017) 8 Cal.App.5th 910, 926; *Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1545; *Brown v. Memorial Nat. Home Foundation* (1958) 158 Cal.App.2d 448, 459; *Steinberg v. Goldstein* (1954) 122 Cal.App.2d 516, 518.)

10

We afford considerable deference to trial court rulings on receivership matters, including orders regarding rehabilitation, issuance of receiver's certificates, approval of the receiver's account, and authorization of sale of property. (*City of Santa Monica, supra*, 43 Cal.4th at p. 931, *County of Sonoma, supra*, 56 Cal.App.5th at p. 685; *City of Sierra Madre v. SunTrust Mortgage, Inc.* (2019) 32 Cal.App.5th 648, 657-658; see *Hillman v. Stults* (1968) 263 Cal.App.2d 848, 876.) We review such orders for abuse of discretion, considering all the surrounding facts and circumstances presented. (*City of Santa Monica,* at pp. 931-933; see *County of Sonoma v. Quail* (2020) 56 Cal.App.5th 657, 671.) Whether to approve a receiver's account and grant or deny a motion to discharge the receiver is within the trial court's broad discretion. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 866.) "In examining the receiver's account, the court assumes the receiver is honest until the contrary appears. [Citation.] Unsubstantiated objections to a receiver's account do not provide a basis for refusing to approve an account." (*Id.* at p. 865.)

B

Citing Health and Safety Code sections 17958 and 17960, the trial court order confirming the appointment of the receiver, and former California Building Code section 107.1, Esguerra-Sheldon contends that building plans, architectural drawings, and structural calculations were required for rehabilitation work at the property. The cited authorities do not support her assertion.

Former California Building Standards Code section 107.1[2] provided that submittal documents (consisting of construction documents, statements of special inspections,

---

[2] The California Building Standards Code (State Building Code) is published in its entirety every three years, with supplements in other years as necessary. (*California Apartment Assn. v. City of Fremont* (2002) 97 Cal.App.4th 693, 697 (*California Apartment Assn.*).) The State Building Code relevant to this case is the 2019 Triennial

11

geotechnical reports, and other data) needed to be submitted in two or more sets with each permit application. It stated that the construction documents had to be prepared by a registered design professional when required by law, and when special conditions existed, the building official was authorized to require preparation by a registered design professional of additional construction documents. However, the building official was authorized to waive the submission of construction documents and other data if review of that information would not be necessary.

Health and Safety Code section 17958 provides that the State Building Code becomes effective 180 days following publication of a new State Building Code, unless amended by local authorities. (*California Apartment Assn., supra*, 97 Cal.App.4th at p. 695.) Health and Safety Code section 17960 requires the building department of every city or county to enforce, within its jurisdiction, all provisions published in the State Building Code, the provisions of the State Housing Law (Health & Safety Code, §§ 17910-17998.3), and other rules and regulations promulgated pursuant to the provisions of the State Housing Law pertaining to the erection, construction, reconstruction, movement, enlargement, conversion, alteration, repair, removal, demolition or arrangement of apartment houses, hotels or dwellings.

Although it is *possible* that submittal documents were required for the rehabilitation work performed at the property, Esguerra-Sheldon has not established that they were in fact required. In any event, we do not consider her assertions that the bidding contractors did not submit plans, the City's Building Department did not review plans, and a permit was issued without plans, because Esguerra-Sheldon did not cite to a portion of the record supporting those assertions. (*Miller v. Superior Court* (2002) 101

---

edition, which was effective January 1, 2020 to December 31, 2022. (<https://www.dgs.ca.gov/bsc/codes> [as of June 22, 2026].)

Cal.App.4th 728, 743; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

The trial court's order confirming the appointment of the receiver authorized the receiver to secure a cost estimate and construction plan from a licensed contractor to make the necessary repairs, but it did not require the receiver to obtain building plans, architectural drawings, structural calculations or other submittal documents. The receiver's application for approval of his rehabilitation plan included a written estimate from Vitex Innovations (Vitex), the contractor selected by the receiver. The estimate detailed the work Vitex proposed to perform. Esguerra-Sheldon has not shown that Vitex's estimate was insufficient to satisfy the requirement of a construction plan under the trial court order.

IV

Esguerra-Sheldon also claims that a construction bid matrix did not support trial court funding and sale orders. In particular, she contends the bids that contractors submitted to the receiver did not match the City's list of code violations.

The receiver submitted declarations averring that on October 25, 2021, City inspectors identified the code violations remaining at the property following the clean out of the property, and two licensed contractors attended the walk-through to provide bids for the next phase of the rehabilitation. The receiver gave three contractors – Vitex, JC Construction, and IPA Construction – copies of the City's May 17, 2021 list of code violations. The receiver averred that the bids from the contractors addressed the code violations identified by the City, and Vitex performed the work. And on April 26, 2022, the City signed off on the work, confirming there were no remaining code violations. The "dangerous building" tag was removed. Because the receiver's averments established that the contractor bids addressed the code violations, and Esguerra-Sheldon has not shown otherwise or established trial court error in this regard, her contention lacks merit.

13

# V

According to Esguerra-Sheldon, the City and the receiver engaged in fraud, rendering the trial court's orders invalid.

First, Esguerra-Sheldon claims the City and the receiver knowingly excluded from the proceedings every notice and order issued after the Prok notice. But the portions of the record Esguerra-Sheldon cites do not support her factual assertion. For that reason, we disregard the claim.

Esguerra-Sheldon next argues the City and the receiver fabricated the City notice, and the receiver falsely represented to the trial court that the City notice governed Esguerra-Sheldon's obligations. The portions of the record Esguerra-Sheldon cites in support of these assertions do not show that the City notice was fabricated. Prior to the appointment of the receiver, Esguerra-Sheldon did not permit City inspectors to enter her house and conduct a full inspection. After the receiver was appointed, the receiver arranged for City Code Enforcement Division and Building Department representatives to inspect the property and identify existing violations. The City issued the City notice following the inspection, identifying existing code violations and required corrections. Unsupported by legal analysis and citation to authority, Esguerra-Sheldon's claim that the City notice was defective, incorrect and invalid is forfeited. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1 (*Okasaki*); *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656 (*Keyes*).)

Esguerra-Sheldon also states that the City notice misidentified the Sacramento Suburban Water District as an owner or beneficiary of record. The City notice was directed to the Sacramento Suburban Water District and stated that the District was the owner and/or beneficiary of record. But Esguerra-Sheldon does not cite any portion of the record supporting her contention that the District did not have a lien against the property or that it was misidentified as a beneficiary of record.

14

Esguerra-Sheldon further complains that the City submitted outdated photographs to create an illusion of ongoing danger. The portion of the record she cites are exhibits to Prok's declaration in support of the City's application for an order appointing a receiver. Prok authenticated photographs taken during his April 12, 2021 inspection and described code violations that existed at the property. Esguerra-Sheldon has not demonstrated how the photographs taken during the April 12, 2021 inspection were outdated for purposes of the City's April 29, 2021 application for appointment of a receiver.

As for her request that this court grant her leave to file a complaint against the receiver for alleged misconduct, Esguerra-Sheldon cites no legal authority supporting such an order in this case. The claim is forfeited for that reason. (*Okasaki, supra*, 203 Cal.App.4th at p. 1045, fn. 1; *Keyes, supra*, 189 Cal.App.4th at p. 656.)

VI

Esguerra-Sheldon argues the City improperly obtained her default. She adds that the City excluded her from receivership proceedings following the entry of default, denying her due process of law.

The City served the summons and complaint on Esguerra-Sheldon by substitute service on March 28, 2021. Such method of service is authorized under Code of Civil Procedure section 415.20. The proof of service for the summons and complaint is accompanied by an affidavit of due diligence by the process server and proof of service of the summons and complaint by mail on Esguerra-Sheldon. Service of the summons by substitute service is deemed complete on the 10th day after the mailing. (Code Civ. Proc., § 415.20, subd. (b).) Esguerra-Sheldon does not establish, with citation to the record, that service of the summons and complaint was improper.

The record does not show the filing of an answer, demurrer, motion to strike, motion to transfer the action, motion to quash service of summons, motion to stay or dismiss the action, or a notice of the filing of a petition for writ of mandate before the City filed its request for entry of default on February 9, 2022. The City's request for

15

entry of default included a declaration that a copy of the request was served on Esguerra-Sheldon by mail. The trial court clerk must enter the default of the defendant upon written application of the plaintiff where the plaintiff has served the summons and complaint, the defendant did not file any of the above responses, and the plaintiff's request for entry of default includes an affidavit of mailing. (Code Civ. Proc., §§ 585, subd. (b), 587.) The trial court clerk properly entered Esguerra-Sheldon's default.

The entry of a default terminated Esguerra-Sheldon's right to take any further affirmative steps in the action until the default was set aside or a default judgment was entered. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 385.) A defendant who is in default is barred from further participation in the proceedings and is not entitled to further notices or service of papers. (Code Civ. Proc., § 1010; *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 343; *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1301; *Devlin*, at pp. 385-386; *Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823 & fn. 11.) Esguerra-Sheldon's claims to the contrary, without citation to supporting legal authority, are forfeited. (*Okasaki, supra*, 203 Cal.App.4th at p. 1045, fn. 1; *Keyes, supra*, 189 Cal.App.4th at p. 656.) Although Esguerra-Sheldon complains that the receiver falsely stated in proofs of service that there was a court order or agreement by the parties to accept electronic service, she was not entitled to notice or service after default was entered against her.

Esguerra-Sheldon filed an ex parte application to vacate the default on May 26, 2023. But the trial court denied the motion because a noticed motion was required. The record does not show that Esguerra-Sheldon filed a noticed motion to set aside the entry of default.

Esguerra-Sheldon argues she was entitled to notice under California Rules of Court, rule 3.1184. Rule 3.1184 requires notice of a motion requesting approval of the receiver's final account and report, discharge, and exoneration of the receiver's surety.

16

(Cal. Rules of Court, rule 3.1184(c).) Even if rule 3.1184 required notice to Esguerra-Sheldon regardless of the entry of default, the receiver provided Esguerra-Sheldon notice of his final account and motion to terminate the receivership and exonerate his surety's bond. And Esguerra-Sheldon attended the hearing for that motion. Neither *Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, disapproved in *People v. Freeman* (2010) 47 Cal.4th 993, 1006, fn. 4 nor *People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51 – cases Esguerra-Sheldon relies on – are helpful as they do not involve an entry of default.

As for the receiver's efforts to obtain authorization to sell the property, the receiver's motion for authorization to list the property for sale was served on Esguerra-Sheldon by overnight delivery and by e-mail to the Gmail address identified on papers Esguerra-Sheldon filed in the trial court. Esguerra-Sheldon filed papers in response to the receiver's motion. She also filed papers in response to the receiver's subsequent applications for an order compelling Esguerra-Sheldon to vacate the property so that it can be shown to prospective buyers, which applications were also served on Esguerra-Sheldon by e-mail to her Gmail address. The receiver's motion for an order approving the final sale of the property was likewise served on Esguerra-Sheldon by e-mail to her Gmail address.

Esguerra-Sheldon cites *Peralta v. Heights Medical Center, Inc.* (1988) 485 U.S. 80 (*Peralta*) and *Rappleyea, supra*, 8 Cal.4th 975 for the proposition that a party need not set aside a default to challenge jurisdictional defects, void orders, defective service, fraud or "denials of mandatory statutory notice." *Peralta* and *Rappleyea* are distinguishable. In *Peralta*, the plaintiff conceded that the trial court must assume the truth of the defendant's claim that he was not properly served with process. (*Peralta*, at pp. 81-82, 84 & fn. 5.) There is no such concession here and Esguerra-Sheldon does not show that the summons and complaint were improperly served. In *Rappleyea*, entry of default was set aside because the trial court clerk had misadvised the defendants about the filing fee.

17

(*Rappleyea*, at pp. 978-979, 982-984.)  In addition, the plaintiff's attorney incorrectly advised the defendants about obtaining relief from the default.  (*Id.* at pp. 979, 984.)  No such facts are shown here.

Esguerra-Sheldon has not shown error regarding the entry of default.  We do not consider her arguments about immunity and exceptions to immunity because there is no pleading before us alleging liability by the City or the receiver.

VII

Esguerra-Sheldon further argues the trial court erred in discharging the receiver and exonerating the surety's bond.

According to Esguerra-Sheldon, the trial court prematurely exonerated the surety's bond because the time for her to make a claim on the bond under Code of Civil Procedure section 996.440 had not expired.[3]  However, the receiver's surety is liable for acts or

---

[3]  Code of Civil Procedure section 996.440 provides, "(a) If a bond is given in an action or proceeding, the liability on the bond may be enforced on motion made in the court without the necessity of an independent action.  [¶]  (b) The motion shall not be made until after entry of the final judgment in the action or proceeding in which the bond is given and the time for appeal has expired or, if an appeal is taken, until the appeal is finally determined.  The motion shall not be made or notice of motion served more than one year after the later of the preceding dates.  [¶]  (c) Notice of motion shall be served on the principal and sureties at least 30 days before the time set for hearing of the motion. The notice shall state the amount of the claim and shall be supported by affidavits setting forth the facts on which the claim is based.  The notice and affidavits shall be served in accordance with any procedure authorized by Chapter 5 (commencing with Section 1010).  [¶]  (d) Judgment shall be entered against the principal and sureties in accordance with the motion unless the principal or sureties serve and file affidavits in opposition to the motion showing such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact.  If such a showing is made, the issues to be tried shall be specified by the court.  Trial shall be by the court and shall be set for the earliest date convenient to the court, allowing sufficient time for such discovery proceedings as may be requested.  [¶]  (e) The principal and sureties shall not obtain a stay of the proceedings pending determination of any conflicting claims among beneficiaries."

18

omissions of the receiver before the order releasing the surety. (Code Civ. Proc., § 996.150 [stating that if a surety is ordered released from liability on a bond, the bond remains in full force and effect for all liabilities incurred before and for acts, omissions or causes existing or which arose before the release]; see *Vitug v. Griffin* (1989) 214 Cal.App.3d 488, 497; *Administrative Management Services, Inc. v. Fidelity & Deposit Co.* (1979) 89 Cal.App.3d 532, 535-536.) The trial court's order did not release the surety from existing liability.

Citing *Stewart v. State* (1969) 272 Cal.App.2d 345 and *Taylor v. Easton* (8th Cir. 1910) 180 F. 363, Esguerra-Sheldon nevertheless contends the trial court's order discharging the receiver and exonerating his surety's bond must be reversed. Those cases do not help Esguerra-Sheldon. *Stewart* involved whether a trial court abused its discretion in approving the final account of a receiver and exonerating the receiver's bond where the receiver collected and withheld sales and disability and unemployment insurance taxes but failed to pay the taxes to the State on a prior basis over the ordinary debts of the insolvent receivership estate. (*Stewart*, at pp. 347-351.) In *Taylor*, there were findings that the receiver misappropriated receivership assets and made false and misleading reports to the court, which induced the court to grant his discharge. (*Taylor*, at p. 366.) Those circumstances have not been shown to be present in this case.

Esguerra-Sheldon also appears to contend that she had no opportunity to challenge the receiver's conduct. The record does not support that claim. Esguerra-Sheldon filed various papers in the trial court asserting that the receiver had engaged in misconduct, including that the receiver had allegedly presented false documents and failed to provide Esguerra-Sheldon notice of particular documents. Because she cites no legal authority supporting her claim that the trial court may not exonerate the surety's bond until she has asserted claims against the surety, we do not consider that claim. (*Okasaki, supra*, 203 Cal.App.4th at p. 1045, fn. 1; *Keyes, supra*, 189 Cal.App.4th at p. 656.)

19

## DISPOSITION

The trial court's order approving the receiver's final account and granting the receiver's motion to terminate the receivership and exonerate his surety's bond is affirmed.

/S/
MAURO, J.

We concur:

/S/
EARL, P. J.

/S/
KRAUSE, J.